UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SADDLE CREEK TRANSPORTATION
INC., a Florida corporation,

   Plaintiff,

 v.

NATURAL GAS VEHICLES TEXAS
INC., a Texas corporation; FARROUKH
ZAIDI, an individual; NGV MOTORI USA,
LLC, a Virginia limited liability company;
and NGV MOTORI SRL, a foreign entity,

   Defendants.
               /

Case No.

JURY TRIAL DEMANDED

**COMPLAINT AND DEMAND FOR JURY TRIAL**
**(Injunctive Relief Sought)**

Plaintiff, SADDLE CREEK TRANSPORTATION INC. ("Saddle Creek"), by and through its undersigned counsel, sues Defendants, NATURAL GAS VEHICLES TEXAS INC. ("NGVT"), FARROUKH ZAIDI ("Mr. Zaidi"), NGV MOTORI USA ("Motori USA"), and NGV MOTORI SRL ("Motori SRL"), and as grounds for such states as follows:

1. This is an action for injunctive relief and damages caused by Defendants in manufacturing, selling, and installing faulty and defective dual natural gas and diesel dual fuel engine systems in Plaintiff's trucks, in failing to uphold agreements relating to those systems, and in making material misrepresentations that led to Plaintiff's purchase of the faulty and defective systems.

## JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.

3. Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this claim occurred in Polk County, Florida.

## PARTIES

4. Plaintiff, SADDLE CREEK TRANSPORTATION INC., is a Florida corporation with its principal place of business at 3010 Saddle Creek Road, Lakeland, Florida 33801.

5. Defendant, NATURAL GAS VEHICLES TEXAS INC., is a Texas corporation with its principal place of business at 9233 Denton Drive, Suite 200, Texas, 75235.

6. Defendant, FARROUKH ZAIDI, is an individual residing at 6121 Preston Haven Drive, Dallas, Texas, 75230-2953. Mr. Zaidi is the chief executive officer and president of Natural Gas Vehicles Texas, Inc.

7. Defendant, NGV MOTORI USA, LLC, is a Virginia foreign limited liability company with its principal place of business at 5589 Callcott Way, Suite 1416, Alexandria, Virginia, 22312, and, upon information and belief, is a wholly owned subsidiary of Defendant Motori SRL S.p.A.

8. Defendant, MOTORI SRL, is a foreign corporation with its principal place of business at Via R. Amundsen 01, P.IVA 01735660357, 42010, Gavassa, Reggio Emilia, Italy.

**FACTS COMMON TO ALL COUNTS**

9. At all times mentioned, Plaintiff was, and now is, the owner of 50 Mack trucks. Saddle Creek uses these trucks in its business of providing nationwide logistics through transportation of cargo.

10. At all times mentioned, Defendant Motori SRL was, and still is, engaged in the business of manufacturing and marketing Motori brand engines and systems for various types of trucks.

11. At all times mentioned, Defendant Motori USA was, and still is, engaged in the business of marketing, selling, and distributing Motori brand engines and systems throughout the United States.

12. At all times mentioned, Defendant NGVT was an authorized distributor and installer for Defendants Motori SRL and Motori USA in the State of Texas.

13. On May 4, 2015, Saddle Creek and NGVT entered into an Agreement for Conversion Services ("Conversion Agreement"). A true and correct copy of that Agreement is attached hereto and incorporated herein as Exhibit A.

14. The Conversion Agreement contained a limited warranty at Clause 3 of 24 months or 200,000 miles.

15. The Conversion Agreement specified that NGVT would convert no fewer than 50 engines in trucks owned by Saddle Creek from diesel burning engines to diesel and compressed natural gas burning engines. This conversion was accomplished by installing dual fuel systems manufactured by Motori onto the trucks' engines.

16. These dual fuel systems were specified to be NGV Motori Venturi Injection Dual Fuel Technology engine systems ("NGVT/Motori converted engines"). A true and correct copy of Estimate 1021 that is referenced in the Conversion Agreement and contains the specifications of the conversion systems is attached hereto and incorporated herein as <u>Exhibit B</u>.

17. When NGVT marketed and promoted the NGVT/Motori converted engines, NGVT promised that the NGVT/Motori converted engines would on average use 70 percent or greater compressed natural gas.

18. The converted trucks, however, have experienced an average "substitution"—meaning the average use of compressed natural gas instead of diesel—of less than 50 percent. The higher usage rate of costly diesel gas has significantly decreased the value of the return on investment made by Saddle Creek in the NGVT/Motori converted engines.

19. Additionally, and significantly, the Exhaust Gas Recirculation ("EGR") systems in the NGVT/Motori converted engines constantly become clogged and block the flow of exhaust.

20. The underperforming and faulty EGR systems have resulted in significant repair costs, out-of-service time, and other damages to Saddle Creek. As of the date of this Complaint, Saddle Creek has incurred repair expenses of no less than $34,884.00 on the repair of faulty EGR systems alone. These expenses continue to grow.

21. Every time a truck experiences downtime due to repairs, Saddle Creek loses income potential on its truck. Downtime costs an average of $1,000.00 per day in lost revenues and maintenance expenses. Specifically, this cost is derived from the lack of use of out-of-

service trucks and overhead costs associated with maintaining the vehicles. Saddle Creek will prove at trial the number of trucks that have been out of service and the total damages resulting therefrom.

22. On May 4, 2015, Saddle Creek and NGVT entered into a second agreement. This was an Agreement for Reconditioning Services ("Reconditioning Agreement"). A true and correct copy of the Reconditioning Agreement is attached hereto and incorporated herein as Exhibit C.

23. The Reconditioning Agreement contained a limited warranty at Clause 3 that stated "[e]ach repair related to the [reconditioning] Work will carry a two-year, unlimited mileage warranty on engines and the warranty of the parts provider, as applicable, on other parts."

24. NGVT reconditioned 17 trucks under the Reconditioning Agreement. These trucks reconditioned by NGVT have had serious repair and maintenance issues, with total repairs having accumulated to over $100,000.00. Saddle Creek will prove at trial the actual amount of rising damages.

25. The repairs of reconditioned trucks have also resulted in serious downtime of Saddle Creek's trucks. Again, Saddle Creek will prove at trial the number of trucks that have been out of service and the total damages resulting therefrom.

26. On several occasions, Saddle Creek has informed NGVT through its CEO and president, Mr. Zaidi, of the need for warranty repair and the associated costs.

27. Mr. Zaidi and Mark Harrell, Senior Director of Transportation and Fleet Assets at Saddle Creek, met on December 6, 2016. On that date, Mr. Harrell discussed outstanding

repair invoices for warranty work and underperformance of the NGVT/Motori converted engines.

28. As of December 6, 2016, Saddle Creek had been completing warranty work through local Mack dealers, which was authorized by NGVT prior to completing the work. Mr. Harrell sought payment on the outstanding invoices, which he had submitted to NGVT. NGVT did not pay those invoices.

29. On October 19, 2017, Mr. Zaidi and Mr. Harrell again met. They discussed the outstanding repair invoices for warranty work, which by that time had nearly doubled from the December 2016 balance. They also discussed the underperformance of the NGVT/Motori converted engines. Again, Mr. Zaidi promised payment for warranty work, yet no payment ever came.

30. The various invoices and requests to Mr. Zaidi seeming futile, Saddle Creek, through counsel, sent a notice of the outstanding warranty claims and demand for payment on March 23, 2018. As of the date of this Complaint, Saddle Creek has received no payment on the outstanding warranty claims from NGVT.

31. Saddle Creek has also sought, in an effort to maintain the vehicles in which the converted engine systems were installed and to mitigate further damages to its trucks, the basic diagnostic software system ("diagnostic software") required to access the dual fuel systems. Without that diagnostic software, Saddle Creek cannot repair or maintain the dual fuel systems, rendering them useless to the Saddle Creek trucks on which they are installed.

32. On each truck where the dual fuel system is unable to be diagnosed, the trucks run on diesel as if the dual fuel system was never installed. The effective conversion rate on those trucks becomes zero percent.

33. On June 18, 2018, Saddle Creek renewed its request to NGVT and Mr. Zaidi to pay the outstanding warranty invoices. Saddle Creek has also demanded that NGVT pay damages for its product liability in the failed and troublesome performance of the NGVT/Motori converted engines.

34. On June 14, 2018 and July 20, 2018, Saddle Creek also made demand upon Motori USA and Motori SRL, respectively, for their failed and troublesome NGVT/Motori converted engines.

35. Both the Conversion Agreement and the Reconditioning Agreement are governed by choice of law provisions specifying the laws of the State of Texas.

### Count I against NGVT
### (Breach of Contract)

36. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 above.

37. NGVT had a contract with Saddle Creek to convert Saddle Creek's truck engines from standard diesel burning engines to dual fuel conversion engines that would use on average 70 percent or greater compressed natural gas.

38. By installing dual fuel engine systems that do not meet the promised fuel usage, among other things, NGVT materially breached its contract with Saddle Creek. NGVT failed to execute the contract with the quality of product agreed.

39. Further, NGVT has breached its duty of good faith and fair dealing in its performance of the contract by refusing to provide Saddle Creek with access to the diagnostic software necessary to run and maintain the dual fuel systems.

40. As a direct and proximate result of NGVT's material breaches, Saddle Creek has suffered damages in an amount that exceeds the minimum jurisdictional limits of the Court. Saddle Creek's damages include amounts in excess of $100,000.00 due for repairs of the engines, for poor performance of the engine systems, for out-of-service trucks, and for inflated costs of poor-performing engines.

### Count II against NGVT
### (Breach of Express Warranty for Products Sold)

41. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 above.

42. At the time of purchase, and as a part of the transaction, NGVT made an affirmation or promise concerning the NGVT/Motori converted engines. This affirmation or promise included a statement as to the quality and performance of the NGVT/Motori converted engines. This affirmation or promise also included an express warranty that the engine systems would be delivered and installed free of defects.

43. As part of the express warranty in the Conversion Agreement, NGVT promised that the NGVT/Motori converted engines would be as represented and free of defects for 200,000 miles or 24 months, whichever came first.

44. The NGVT/Motori converted engines installed have been consistently underperforming far below the representations made by NGVT. Repair costs and downtime costs have been incurred by Saddle Creek.

45. NGVT's affirmation or promise relating to the quality and performance of the NGVT/Motori converted engines was made to induce, and did induce, Saddle Creek to purchase the dual fuel engine systems, and was intended by the parties to become part of the basis of the bargain. Under the provisions of § 2.313 of the Texas Business and Commerce Code, the affirmation constituted an express warranty that the product would conform to the affirmation or promise.

46. The express warranty was false and untrue in that the NGVT/Motori converted engines have experienced the performance issues described in this Complaint, and the engine systems were therefore not delivered as promised.

47. As a direct and proximate result of NGVT's breach of warranty, Saddle Creek incurred damages in an amount representing the difference, at the time and place of Saddle Creek's acceptance, between the value of the NGVT/Motori converted engines delivered by NGVT and accepted by Saddle Creek and the value the NGVT/Motori converted engines would have had if they had been as warranted, which is an amount within the jurisdictional bounds of this court.

48. As a direct and proximate result of NGVT's breach of warranty, Saddle Creek sustained further incidental and consequential damages, including amounts in excess of $100,000.00 due for repairs of the engines, for poor performance of the engine systems, for out-of-service trucks, and for inflated costs of poor-performing engines

### Count III against All Defendants
### (Breach of Implied Warranty of Fitness for a Particular Purpose)

49. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 above.

50. At all times mentioned, all Defendants had reason to know the particular purpose for which Saddle Creek required Motori's dual fuel engine systems.

51. At all times mentioned, Defendants had reason to know that Saddle Creek was relying on Defendants' skill and judgment in designing, selecting, manufacturing, and applying to Saddle Creek's particular purpose an adequate and suitable dual fuel engine systems for use in Saddle Creek's converted trucks.

52. Defendants impliedly warranted that NGVT/Motori converted engines would be fit for the particular purpose for which Saddle Creek required the engine systems. Therefore, under the provisions of § 2.315 of the Texas Business and Commerce Code, Defendants provided an implied warranty for a particular purpose.

53. Defendants further impliedly warranted that Saddle Creek would be able to maintain and repair the dual fuel systems and have access to the software that governs the systems in order to do so.

54. Saddle Creek relied on Defendants' implied warranty in reaching a decision to purchase Defendant NGVT/Motori converted engines.

55. Defendants breached their implied warranty by providing engine systems that were not fit for the particular purpose required by Saddle Creek.

56. Defendants breached their implied warranty by refusing to provide access to the software that governs the dual fuel systems.

57. As a direct and proximate result of Defendants' breach of the implied warranty, Saddle Creek suffered damages.

### Count IV against All Defendants
### (Negligent Misrepresentation)

58. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 above.

59. NGVT and Mr. Zaidi, and by them Motori USA and Motori SRL, made numerous false representations to Saddle Creek regarding the quality and performance of the NGVT/Motori converted engines.

60. Defendants did not exercise reasonable care or competence in communicating their representations to Saddle Creek or did not exercise reasonable care or competence in obtaining the information on which their representations to Saddle Creek were based.

61. Defendants intended that Saddle Creek would rely on their representations, and Saddle Creek did in fact justifiably rely on same by entering into both the Conversion Agreement and the Reconditioning Agreement.

62. As a direct and proximate result of Defendants' representations, Saddle Creek purchased fifty (50) dysfunctional NGVT/Motori converted engines and had a number of its trucks reconditioned in a manner that was nowhere near the description that Defendants had provided.

63. As a result, Saddle Creek has been injured and has suffered damages in an amount that exceeds the minimum jurisdictional limits of the Court.

### Count V against All Defendants
### (Fraudulent Misrepresentation)

64. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 above.

65. NGVT and Mr. Zaidi, and by them Motori USA and Motori SRL, made numerous deliberate false representations to Saddle Creek regarding the quality and

performance of the Motori dual fuel systems. Mr. Zaidi also made deliberate false representations as to his expertise in natural gas engine acquisition, installation, and performance.

66. Defendants deliberately communicated their misrepresentations to Saddle Creek. During the entire time that Defendants were selling the Motori dual fuel systems to Saddle Creek, they knew that the converted engines would not perform as promised.

67. Defendants intended that Saddle Creek would rely on their representations, and Saddle Creek did in fact justifiably rely on same by entering into both the Conversion Agreement and the Reconditioning Agreement.

68. As a direct and proximate result of Defendants' representations, Saddle Creek purchased 50 dysfunctional Motori dual fuel systems and had a number of its trucks reconditioned in a manner that was nowhere near the description that Defendants had provided.

69. Saddle Creek has been injured and has suffered damages in an amount that exceeds the minimum jurisdictional limits of the Court. Additionally, Defendants' acts were committed willfully and wantonly, and accordingly, Saddle Creek is entitled to recover punitive damages in an amount to be determined by the trier of fact. Saddle Creek seeks recovery of those damages from Defendants.

### Claim VI against all Defendants
**(Injunctive Relief)**

70. Plaintiff realleges and incorporates by reference paragraphs 1 through 35 above.

71. Defendants Motori SRL manufactured for sale, Motori USA marketed for sale, and Mr. Zaidi and NGVT did sell the NGVT/Motori converted engines for trucks to Saddle Creek that would require diagnostic software to perform maintenance and repairs on the trucks,

but have declined to give Saddle Creek access to the diagnostic software so that it can perform its own maintenance and repairs, all while declining to abide by the contracts, express warranties, and implied warranties as otherwise stated herein.

72. Without access to the diagnostic software, Saddle Creek is unable to perform maintenance or repairs to the NGVT/Motori converted engines.

73. Without access to the diagnostic software, Saddle Creek also cannot use the natural gas conversion on trucks where the conversion has failed, rendering the NGVT/Motori converted engines utterly useless for their intended purpose and forcing Saddle Creek to run the converted trucks on diesel fuel.

74. Each time a truck experiences downtime due to repairs, Saddle Creek loses income potential on its truck. Downtime costs an average of $1,000.00 per day in lost revenues and maintenance expenses.

75. Saddle Creek seeks permanent injunctive relief to protect its contractual rights and injuries described above. A favorable decision would redress Saddle Creek's harms suffered as a result of being prevented from using the NGVT/Motori converted engines in the way that they were intended to be used.

## **DEMAND FOR JURY TRIAL**

76. Saddle Creek asserts its rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, for the reasons set forth herein, Plaintiff demands a judgment for permanent injunctive relief and damages against Defendants in an amount to be proven at trial, together with pre-judgment and post-judgment interest under Texas laws at the highest legal rate available, attorneys' fees under the Agreements and all applicable law, treble and punitive damages, all costs of court, and any further relief this Court deems just, equitable, and proper, both at equity and law.

Date: December 7, 2018

Respectfully submitted,

**TAYLOR & ASSOCIATES,
ATTORNEYS AT LAW, P.L.**
/s/ Kristen M.J. Johnson
Kristen M.J. Johnson, Esq.
Florida Bar No. 1005180
Michael S. Roscoe, Esq.
Florida Bar No. 0125286
20 3rd Street SW, Suite 209
Winter Haven, FL 33880
(863) 875-6950 (tel)
(863) 875-6955 (fax)
kjohnson@taylorattorneys.net
jtaylor@taylorattorneys.net
jokirkland@taylorattorneys.net
efiling@taylorattorneys.net
*Trial Counsel for Plaintiff*